UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JENNIFER SHARP,

        Plaintiff,

v.                                 CASE NO. 3:19-cv-57-J-32JBT

VANGUARD REALTY, INC.,
etc., et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendants' Motion for Summary Judgment ("Motion") (Doc. 41) and Plaintiff's Response thereto (Doc. 43).   The Motion was referred to the undersigned for a Report and Recommendation regarding an appropriate resolution.   (Doc. 45.)   For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion be **DENIED**.

### I.   Background

Plaintiff was hired by Defendant Vanguard Realty, Inc. ("Vanguard") as a

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Relocation Coordinator in or around June 2017.   (Doc. 30 at 3; Doc. 44-1 at 11.)

On January 10, 2019, Plaintiff filed this action alleging claims for violations of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Florida

Private Whistleblower Act ("Florida Whistleblower Act"), Fla. Stat. §§

448.101–05.   (Doc. 1.)   Specifically, Plaintiff brought claims under the FLSA for

unpaid overtime wages, and retaliation based on a failure to promote her to

Senior Coordinator, against Vanguard, Peter Dalton (Vanguard's CEO), Krystina

O'Rourke (Vanguard's Relocation Director and Plaintiff's former direct

supervisor), and Vicki Terry (Vanguard's Company Operations Manager).   (*Id.*)

Plaintiff also brought a claim for failure to promote against Vanguard under the

Florida Whistleblower Act.   (*Id.*)

On July 24, 2019, Defendants took Plaintiff's deposition in this case.

(Doc. 44-1.)   During the deposition, Plaintiff acknowledged that she had

provided false and/or inaccurate information regarding her employment history

on her employment application.[2]   (*Id.* at 5–7.)   Specifically, Plaintiff testified that

she stated on her application that she had worked for a doctor's office longer

than she actually had, and that she did not list a pharmacy that she had worked

at during the relevant time period, because she wanted "to show that [she] had

---

[2] Plaintiff initially performed work for Vanguard through a temporary job
placement agency, Idea Staffing, for approximately three months before being hired by
Vanguard.  (Doc. 44-1 at 4, 11.)  Thus, the relevant employment application was Idea
Staffing's application.  (Doc. 41-1 at 6–10.)

more experience otherwise than being a pharmacy technician." (*Id.* at 6.)   On July 29, 2019, Mr. Dalton, with Ms. Terry present, terminated Plaintiff's employment with Vanguard based on the subject misrepresentation.   (Doc. 44-7; Doc. 44-9 at 3–5; Doc. 44-11 at 3–5.)

Thereafter, Plaintiff filed the Second Amended Complaint ("SAC") (Doc. 30) which added FLSA retaliation claims against Vanguard, Mr. Dalton, and Ms. Terry, for Plaintiff's wrongful termination, as well as a wrongful termination claim against Vanguard under the Florida Whistleblower Act.[3]   (*Id.*)[4]   Vanguard, Mr. Dalton, and Ms. Terry now seek partial summary judgment on the following claims in the SAC: Count IV – Unpaid Overtime under the FLSA as to Ms. Terry; and Counts X, XI, and XII – FLSA Retaliation for Wrongful Termination as to Vanguard, Mr. Dalton, and Ms. Terry.[5]   (Doc. 41.)

## II.   Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to

---

[3] Plaintiff identifies this claim under the Florida Whistleblower Act as Count IX when it is actually Count XIII.   (Doc. 30 at 17.)

[4] As a result, Mr. Dalton, Ms. Terry, and Mark Ryan, Plaintiff's direct supervisor at the time she was terminated, were deposed for a second time after Plaintiff filed the SAC.   (*See* Docs. 44-3, 44-4, 44-8, 44-9, 44-10, 44-11.)

[5] Although the Motion also references Count VI - FLSA Retaliation for Failure to Promote as to Mr. Dalton, no argument is made regarding that count and it does not appear that Mr. Dalton is seeking summary judgment on that claim.

3

any material fact and the movant is entitled to judgment as a matter of law."   The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."   Fed. R. Civ. P. 56(c)(1)(A).   "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant."   *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)).   "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment."   *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.   *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).   "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."   *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations

4

and quotation marks omitted).   Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.   In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## III.   Analysis

### A.   Count IV

In Count IV, Plaintiff alleges that Ms. Terry is individually liable for unpaid overtime wages under the FLSA.   (Doc. 30 at 8.)   As the Eleventh Circuit has stated:

> [A defendant] cannot be held individually liable for violating the overtime provision of the FLSA unless he is an employer within the meaning of the Act.   Section 203 broadly defines an employer as any person acting directly or indirectly in the interest of an employer in relation to an employee.   Whether an individual falls within this definition does not depend on technical or isolated factors but rather on the circumstances of the whole activity.

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (citations and quotations omitted).

"[A] supervisor's title does not in itself establish or preclude his or her liability under the FLSA . . . ." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1310 (11th Cir. 2013). "[I]n order to qualify as an employer under the FLSA, a supervisor must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Id.* at 1313 (quotations omitted). "In determining whether a corporate officer is an employer, we have inquired as to whether the officer was involved in the compensation of employees, the hiring or firing of employees, or other matters in relation to an employee." *Olivas v. A Little Havana Check Cash, Inc.*, 324 F. App'x 839, 845 (11th Cir. 2009) (quotations omitted).[6] "[R]elevant control for purposes of individual liability is control in relation to the employee-plaintiff. However, . . . the jury may infer such control from the exercise of general supervisory powers or the exercise of control over other employees." *Lamonica*, 711 F.3d at 1313.

Ms. Terry argues that she does not meet the definition of an "employer" under the FLSA because she lacked sufficient control over Plaintiff and the day-to-day operations of the department in which Plaintiff worked. (Doc. 41 at

---

[6] Although unpublished Eleventh Circuit decisions are not binding precedent, they may be persuasive authority on a particular point. *See, e.g.*, *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive."). Rule 32.1 of the Federal Rules of Appellate Procedure expressly allows citation to federal judicial unpublished dispositions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

8.)   The undersigned recommends that a genuine issue of material fact exists regarding whether Ms. Terry meets the definition of an "employer" within the meaning of the FLSA.

During the relevant time period, Ms. Terry was the Operations Manager for Vanguard.   (Doc. 44-8 at 2, 4.)   During her deposition, Ms. Terry testified that she did not have control over Plaintiff's rate of pay, schedule, day-to-day activities, or the relocation department where Plaintiff worked.   (*Id.* at 4–6.) She also testified that she did not have authority to promote, demote, or terminate Plaintiff, and that she did not provide input into Plaintiff's performance reviews.   (*Id.* at 5–6.)

However, Ms. Terry also testified that she and the Relocation Director hired Plaintiff, and that they were in charge of hiring and setting the rates of pay for other people in Plaintiff's same position.   (*Id.* at 16, 20.)   Ms. Terry also testified that she had control over Plaintiff regarding technology issues, and that she was "secondary" behind Plaintiff's immediate supervisor regarding discipline for Plaintiff.   (*Id.* at 5.)   Additionally, Mr. Dalton testified during his deposition that Ms. Terry informed him that Plaintiff had presented false and/or inaccurate information on her employment application and that the offense was grounds for termination, that Ms. Terry presented him with a termination notice for Plaintiff, and that Ms. Terry was present when he terminated Plaintiff's employment. (Doc. 44-11 at 3–4.)

The undersigned recommends that a material issue of fact exists regarding whether Ms. Terry possessed sufficient operational control to be held individually liable as an "employer" under the FLSA.   Specifically, in addition to hiring and having some disciplinary control over Plaintiff, Ms. Terry testified that she jointly hired and set compensation rates for other employees in Plaintiff's position. (Doc. 44-8 at 5, 16, 20.)   Additionally, Mr. Dalton's testimony indicates that although Ms. Terry did not personally terminate Plaintiff, she was involved in the process.   (Doc. 44-11 at 3–4.)   This evidence indicates that Ms. Terry was "involved in the compensation of employees, the hiring or firing of employees, or other matters in relation to an employee," including Plaintiff.   *See Olivas*, 324 F. App'x at 845.   Moreover, a "jury may infer [the necessary] control from the exercise of general supervisory powers or the exercise of control over other employees."   *See Lamonica*, 711 F.3d at 1313.   Thus, the undersigned recommends that the Motion be denied as to Count IV.

### B.   Counts X, XI, and XII

In Counts X, XI, and XII, Plaintiff alleges that Vanguard, Mr. Dalton, and Ms. Terry retaliated against her for filing the instant lawsuit by wrongfully terminating her employment in violation of the FLSA.   (Doc. 30 at 14–16.)

### 1.    Legal Principles

As the Eleventh Circuit has stated:

> The anti-retaliation provision of the [FLSA] makes it unlawful for an employer to discharge or otherwise retaliate against an employee for filing a complaint or instituting proceedings related to the FLSA. . . .

> To establish a *prima facie* case of retaliation, a plaintiff may show that (1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action. . . .

> Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to proffer a legitimate reason for the adverse action.  If the employer offers a legitimate reason, the plaintiff must then establish that the proffered reason was pretextual.

*Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018) (citations and

quotations omitted).

Regarding pretext, the Eleventh Circuit has stated:

> The plaintiff can show pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.  In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.

*Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308–09 (11th Cir. 2012).

9

Regarding pretext at the summary judgment stage:

> When deciding a motion for summary judgment in a case in which the defendant has proffered nonretaliatory reasons for its actions, the court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's . . . reasons to permit a reasonable factfinder to conclude that [those reasons] were not what actually motivated its conduct. . . . Ultimately, in a retaliation case the plaintiff must present proof that the desire to retaliate was the but-for cause of the challenged employment action.

*Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1365 (M.D. Fla. 2016).

### 2.    Causation

It is undisputed that Plaintiff initiated this action in January 2019 and was terminated in July 2019, shortly after admitting in her deposition that she provided inaccurate information regarding her employment history on her employment application, which is a legitimate reason for termination.[7]   (Doc. 1; Doc. 30; Doc. 44-1 at 5–7; Doc. 44-7; Doc. 44-9 at 3–5; Doc. 44-11 at 3–5.) Thus, Defendants concede that Plaintiff engaged in protected activity by filing the instant lawsuit and subsequently suffered an adverse employment action when her employment was terminated.   (Doc. 41 at 9.)   Plaintiff does not dispute that Defendants have offered a legitimate reason for terminating her employment, i.e.,

---

[7] The employment application states in relevant part: "I understand that misrepresentation or material omission of facts is cause for dismissal, whenever such falsification or omission is discovered. . . .  I further understand that any information omitted from this application could be considered grounds for immediate termination." (Doc. 41-1 at 10.)

that she provided inaccurate information on her employment application.   (*See* Doc. 43 at 11.)   Thus, the parties disagree only whether Plaintiff has made a sufficient showing regarding causation and pretext to survive summary judgment.

Regarding causation, Defendants argue only that Plaintiff cannot show a causal connection between the filing of the lawsuit and her termination because her admission during her deposition that she provided false information on her employment application constitutes an "intervening act" that breaks any causal link.   (Doc. 41 at 9–10.)   The undersigned recommends that this argument is more appropriately addressed at the pretext stage.   *See Frazier v. Secretary, Dept. of Health and Human Servs.*, 710 F. App'x 864, 871 (11th Cir. 2017) ("At the *prima facie* stage, the plaintiff need only establish that the protected activity and the adverse action were not wholly unrelated.   The plaintiff need not definitively establish causation. . . . Accordingly, we do not evaluate the purported intervening act of misconduct as part of Frazier's *prima facie* case . . . .") (citations and quotations omitted).   Additionally, based on the evidence set forth below, which is relevant to both causation and pretext, the undersigned recommends that Plaintiff has provided sufficient evidence regarding causation to survive summary judgment.

### 3.   Relevant Evidence

The undersigned recommends that, viewed collectively and in the light most favorable to Plaintiff, the following evidence creates a genuine issue of

material fact regarding pretext because it "cast[s] sufficient doubt on the defendant's . . . reasons [for terminating Plaintiff's employment] to permit a reasonable factfinder to conclude that [those reasons] were not what actually motivated its conduct. . . ."  *See Kubiak*, 164 F. Supp. 2d at 1365.  Specifically, certain evidence indicates that prior to Plaintiff's termination, Defendants refused to give her a raise and intentionally withheld her Fourth of July bonus check because she filed this lawsuit.  Other evidence regarding Plaintiff's termination itself suggests that Defendants' retaliatory animus towards Plaintiff for filing this lawsuit "more likely motivated" Defendants to terminate Plaintiff's employment than the reason given.  *See Kragor*, 702 F.3d at 1308–09.  In short, based on the evidence set forth below, a reasonable factfinder could conclude that Defendants exhibited a months-long pattern of retaliatory animus and conduct towards Plaintiff for filing this lawsuit.  Such a factfinder could further conclude that the lawsuit provided the actual motivation for Plaintiff's termination.

### a.    Pre-Termination Evidence

The following evidence tends to show that Defendants refused to give Plaintiff a raise prior to her termination because she filed this lawsuit.  In her affidavit, Plaintiff states that on March 26, 2019, after this lawsuit was filed, her direct supervisor Mark Ryan informed her that "Mr. Dalton told him I would not be getting a raise because I'm suing them."  (Doc. 44-12 at 1.)  Plaintiff also states that "[o]n April 16, 2019, Mr. Ryan advised me that Mr. Dalton will not give me

the raise as long as this lawsuit is active, and that if I dropped the lawsuit I would get the raise."   (*Id.*)   Plaintiff's statements are corroborated by an affidavit from Sheri Walters, a former employee of Vanguard, which states in part that "Mark Ryan told me that he had gone to Peter Dalton to ask for a raise for [Plaintiff] because he thought she deserved one, and that Mr. Dalton told him 'no' because she was suing the company."[8]   (Doc. 44-13 at 1.)

The following evidence suggests that Defendants also intentionally withheld Plaintiff's Fourth of July bonus check prior to her termination.   Plaintiff avers that she did not receive her Fourth of July bonus check when other employees did.   (Doc. 44-12 at 2.)   Plaintiff asked Mr. Ryan about her bonus on July 1, 2019, and he told her on July 9, 2019 that Ms. Terry stated that the "check was misplaced on her desk underneath other paperwork and she didn't realize it was there."   (*Id.*)   Plaintiff received the $75 check the next day.   (*Id.*; Doc. 44-6 at 1.)   However, Plaintiff also states that in August 2019, Jessica Bookstore, an employee of Vanguard, "informed [Plaintiff] that she was told by Debbie Widener, a payroll employee, that the check was intentionally withheld and was not misplaced as Vicki Terry stated."   (Doc. 44 -12 at 2.)   This assertion is corroborated by other evidence suggesting that, despite Defendants' assertions

---

[8] In his deposition, Mr. Ryan denied that he or Mr. Dalton made these statements.   (Doc. 44-3 at 5–6.)

13

to the contrary, Plaintiff's bonus check was issued after all the other bonus checks and only after she inquired about it.[9]

### b.   Termination Evidence

In addition to the evidence set forth above, the following evidence regarding Plaintiff's termination itself suggests that Defendants' retaliatory animus towards her for filing this lawsuit more likely motivated her termination than the reason proffered by Defendants.   Mr. Dalton testified that Plaintiff was the only Relocation Coordinator (which Ms. Terry testified was essentially a low-level position) that he, as the CEO of Vanguard, had ever personally terminated.   (Doc. 44-11 at 5; Doc. 44-9 at 10.)   He testified that such employees would ordinarily be terminated by their department head.   (Doc. 44-11 at 5–6.)   Additionally, Mr. Dalton acknowledged that it was his decision to terminate Plaintiff, and that he did so because she was dishonest on her employment application.   (*Id.* at 3–7.)   However, although the termination had occurred only approximately three months prior to the deposition, he was generally unable to articulate what exactly Plaintiff had been dishonest about.   (*See id.*)

---

[9] For example, although all the other bonus check numbers were in sequential order, Plaintiff's check number is over one hundred numbers later.   (Doc. 44-6 at 1.) This may indicate that it was not issued at the same time or on the same date as the other checks, even though the check ledger indicates that it was.   (*Id.*)   Additionally, although Mr. Ryan testified that Ms. Terry informed him that the check was misplaced, Ms. Terry testified that she did not know why Plaintiff did not receive her bonus check when the other employees did.   (Doc. 44-4 at 4; Doc. 44-9 at 10–11.)

Rather, Mr. Dalton testified that Ms. Terry presented him with a termination notice for Plaintiff indicating that she was being terminated for misrepresenting her work history, skills, and qualifications, but Mr. Dalton did not ask what exactly was misrepresented, nor did he conduct any investigation into the allegation before terminating Plaintiff.   (*Id.* at 4.)   Mr. Dalton testified that: "The facts were presented to me, the fact that the application had been falsified.   And I asked if that was grounds for termination.   I was told it was, and I said, 'Well, let's go ahead and terminate her.'"   (*Id.*)   He then asked Ms. Terry to accompany him to Plaintiff's office where Mr. Dalton informed Plaintiff that she was terminated.   (*Id.* at 4–5.)   Regarding not knowing what exactly Plaintiff was dishonest about before terminating her, Mr. Dalton testified: "Well, she – she either lied on the application or she lied under oath.   Why would I care – I mean, she either committed a written lie or she lied under oath."   (*Id.* at 7.)   When asked directly: "You didn't know what it was about, though?", Mr. Dalton stated: "I didn't care."[10] (*Id.*)

Ms. Terry testified that she did not know why Plaintiff was terminated rather than written up or disciplined in some other way, and that she did not ask Mr. Dalton.   (Doc. 44-9 at 5.)   She further testified that she was not aware of

---

[10]   Mr. Dalton also testified that Plaintiff "was in most ways a substandard employee" even though Mr. Ryan, her direct supervisor, had personally rewarded her with a $100 Visa gift card for being a good employee just weeks before her termination. (Doc. 44-11 at 6; Doc. 44-4 at 4; Doc. 44-5; Doc. 44-12 at 2.)

any investigation regarding Plaintiff's purported misrepresentation. (*Id.*) Nor could she name any other employee of Vanguard who had ever been terminated for making a misrepresentation on an employment application. (*Id.*) Ms. Terry also testified that she has never recommended immediate termination of any employee. (*Id.* at 6.) Additionally, both Ms. Terry and Mr. Dalton acknowledged that another employee in the same department as Plaintiff had received multiple warnings for the following behaviors before she was eventually terminated: 1) she had been under the influence of and/or in possession of drugs and alcohol; 2) she had been discourteous or verbally abusive to a guest or employee; and 3) she had been involved in a physical or verbal fight. (*See id.* 6–9; Doc. 44-11 at 7–8; Doc. 44-15.)

### 4.   Recommendation

In light of the above evidence, the undersigned recommends that material issues of fact regarding causation and pretext exist. Viewing the evidence collectively and in the light most favorable to Plaintiff, a factfinder could reasonably conclude that a "discriminatory reason more likely motivated" Defendants to terminate Plaintiff's employment than the reason given. *See Kragor*, 702 F.3d at 1308–09.

Defendants do not meaningfully address most of the evidence set forth above. (*See* Doc. 41.) Rather, Defendants essentially argue only that Plaintiff's wrongful termination claims must fail because it is undisputed that she

16

was terminated after her act of falsifying portions of her employment application came to light.  (*Id.* at 9–11.)   However, this argument fails to address the aforementioned evidence.

The cases cited by Defendants regarding intervening acts of misconduct are distinguishable because the plaintiffs in those cases presented no evidence from which a factfinder could reasonably conclude that the proffered reasons for termination were pretextual.   *See Fernandez v. Winn-Dixie Stores, Inc.*, Case No. 17-cv-60322-BLOOM/Valle, 2018 WL 538699 (S.D. Fla. Jan. 24, 2018); *Schemkes v. Jacob Transp. Servs., LLC*, Case No. 2:12-CV-1158 JCM CWH, 2014 WL 825947 (D. Nev. Mar. 3, 2014).   Here, based on the evidence Plaintiff has submitted, a reasonable factfinder could conclude that Defendants exhibited a months-long pattern of retaliatory animus and conduct towards Plaintiff for filing this lawsuit that ultimately resulted in her termination once a pretextual reason for such termination could be developed.   Thus, the undersigned recommends that the Motion be denied as to Counts X, XI, and XII.[11]

## IV.   Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

The Motion (**Doc. 41**) be **DENIED**.

---

[11] Therefore, the undersigned recommends that the Court need not address Plaintiff's additional arguments regarding these claims.

**DONE AND ENTERED** at Jacksonville, Florida, on March 11, 2020.


JOEL B. TOOMEY
United States Magistrate Judge




Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record

18